# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**BILLY CANNON,**

        Plaintiff,

v.                                                     **Case No. 15-cv-1370-pp**

**TIMOTHY GRAY, et al.,**

        Defendants.

## DECISION AND ORDER VACATING FEBRUARY 5, 2016 SCREENING ORDER (DKT. NO. 4), SCREENING AMENDED COMPLAINT (DKT. NO. 7), DISMISSING AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM, DENYING AS MOOT THE PLAINTIFF'S MOTION FOR A DECISION AND ORDER (DKT. NO. 9), AND DENYING AS MOOT THE PLAINTIFF'S MOTION FOR PHONE CONFERENCE (DKT. NO. 10)

On November 16, 2015, the plaintiff, who is a prisoner at Stanley Correctional Institution and is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants violated his civil rights. Dkt. No. 1. The plaintiff paid the full filing fee the same day that he filed his complaint. The court screened the complaint on February 5, 2016, pursuant to 28 U.S.C. §1915A(a), and dismissed it based on the plaintiff's failure to state a claim. Dkt. No. 4. On February 9, 2016, the deputy clerk entered judgment, noted that the plaintiff had incurred a strike under 28 U.S.C. §1915(g), and closed the case. Dkt. No. 5.

On February 18, 2016, the plaintiff filed a "Notice of and Motion for Judicial Question." Dkt. No. 6. The plaintiff explained that he received the court's February 9 decision dismissing the original complaint; however, he was

1

uncertain whether the decision also applied to the amended complaint that he had filed on January 6, 2016. Id. At the time the plaintiff filed his motion, the court had no record of the plaintiff ever having filed an amended complaint. After a little digging, however, the court determined that the clerk of court's office had accidentally docketed plaintiff's amended complaint, which he intended to file in this case, as an exhibit to a motion that the plaintiff filed in another case.

This docketing error occurred, in part, because the plaintiff mailed multiple filings for different cases in a single envelope—in fact, not only were the filings in a single envelope, they were also all stapled together. In an attempt to avoid future problems such as the one that occurred here, the court advises the plaintiff to mail materials he intends to file in different cases in separate envelopes.

In this case, the court believes that the cleanest procedure is to vacate its previous decision dismissing the original complaint and to screen the plaintiff's amended complaint, which it would have done if the clerk's office had realized that the amended complaint was meant to be filed in this case.

**I.    SCREENING OF THE PLAINTIFF'S AMENDED COMPLAINT**

　　A.　　Standard for Screening Complaints

The law requires the court to screen complaints, including amended complaints, brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss part or all of a complaint if the plaintiff raises claims that are

2

Case 2:15-cv-01370-PP   Filed 07/07/16   Page 2 of 17   Document 11

legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

To state a claim under the federal notice pleading system, the plaintiff must provide a "short and plain statement of the claim showing that [he] is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). A plaintiff does not need to plead specific facts, and his statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). However, a complaint that offers "labels and conclusions" or "formulaic recitation of the elements of a cause of action will not do." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555). To state a claim, a complaint must contain sufficient factual matter, accepted as true, "that is plausible on its face." Id. (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). The complaint allegations "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citation omitted).

In considering whether a complaint states a claim, courts follow the principles set forth in Twombly. First, they must "identify[] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Iqbal, 556 U.S. at 679. A plaintiff must support legal conclusions

3

with factual allegations. Id. Second, if there are well-pleaded factual allegations, courts must "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id.

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that the defendants: 1) deprived of a right secured by the Constitution or laws of the United States; and 2) acted under color of state law. Buchanan-Moore v. Cnty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009) (citing Kramer v. Vill. of North Fond du Lac, 384 F.3d 856, 861 (7th Cir. 2004)); see also Gomez v. Toledo, 446 U.S. 635, 640 (1980). The court is obliged to give the plaintiff's pro se allegations, "however inartfully pleaded," a liberal construction. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

### B. Key Facts Alleged in the Complaint

In the amended complaint, the plaintiff alleges that State Trooper David Schmidt arrested him without a warrant on February 24, 2011. Dkt. No. 7 at 8. The plaintiff alleges that Schmidt claimed to have stopped the plaintiff for running a yellow/red light, but states that he believes that the true reason Schmidt stopped the plaintiff was because Schmidt had been briefed earlier in his shift about an active arrest warrant. Id.

The plaintiff identifies alleged inconsistencies in Schmidt's arrest report, including whether Schmidt had a physical copy of the warrant when he arrested the plaintiff and the timing of when Schmidt read the warrant to the plaintiff. Id. The plaintiff also details his many efforts to obtain a copy of the

4

warrant. Id. at 9-11; 13-14. The plaintiff indicates that at the end of his report, Trooper Schmidt stated that a copy of the report had been faxed to defendant Timothy Gray, an agent with the Wisconsin Department of Justice's Criminal Investigation Division. Id. at 9. From this fact, the plaintiff deduced that it was defendant Gray who briefed Schmidt about the active warrant. Id. at 13.

After arresting the plaintiff, Schmidt transported the plaintiff to the Waukesha County Jail, where the plaintiff stayed from February 24, 2011, until February 28, 2011. Id. at 11. The plaintiff states that no "neutral and detached magistrate" made "a judicial determination of probable cause." Id. On February 28, 2011, defendant John Doe Gunn of the Milwaukee County Sheriff's Office transported the plaintiff from the Waukesha County Jail to the Milwaukee County Jail, where he stayed until March 8, 2011. Id.

The plaintiff alleges that he was held illegally at the Milwaukee County Jail on a "captain's hold" until he was taken before a judicial officer.[1] Id. The plaintiff claims that defendants Grant Hubener, Karen Lobel, and John Chisholm of the Milwaukee County District Attorney's Office produced for the hearing a criminal complaint alleging probable cause (which the plaintiff argues did not exist). Id. at 12.

The plaintiff claims that Schmidt arrested him illegally, without probable cause; that defendant Gray gave Schmidt the basis for stopping the plaintiff;

---

[1] The plaintiff names as one of the defendants "JOHN DOE, CAPTAIN, HOLD." Dkt. No. 7. A review of the documents the plaintiff attached to his complaint indicates that "captain's hold" is not a person. A "captain's hold" is the procedural document or order that resulted in the plaintiff being held at Milwaukee County Jail. The court infers that the plaintiff intended to name as a defendant the unknown police captain who ordered or authorized that hold.

5

that defendant Gunn participated in the illegal detention by transporting the defendant; that a John Doe captain falsely placed a hold on him; and that the members of the Milwaukee County District Attorney's Office falsely produced a complaint that alleged that there was probable cause when there was not. He also alleges that these defendants, along with Eric Severson (the Waukesha County Sheriff), Daniel Layber (defendant Gray's supervisor), and David Clark[2] (the Milwaukee County Sheriff) conspired to "maliciously detain the plaintiff without probable cause or a Judicia[l] Determination of probable cause." Id. He alleges that these defendants violated his First, Fourth, Eighth and Fourteenth Amendment rights. Id. at 4.

The plaintiff also alleges that on March 17, 2009, Gray entered the plaintiff's home "without a warrant equipped with a surreptitious recording device to secretly record the plaintiff for information without the approval of the District Attorney John Chisholm and without the approval of the Attorney General JB Van Holland [sic], in violation of the Title III Omnibus Crime Control and Safe Street Act of 1968, and Title 18 U.S.C. §2510-2520." Id. at 16. The plaintiff "asserts that on January 14, 2008, Special Agent Timothy Gray swore out a petition in affidavit to District Attorney John Chisholm . . ." and that "on January 16, 2008, Chief Judge Kitty Brennen, signed the requested wiretap order made by Special Gray and signed by District Attorney John Chisholm . . . ." Id. at 16-17. The plaintiff nonetheless argues that Gray's actions violated the cited statute because "Attorney General JB Van Holland

---

[2] The plaintiff refers to the Milwaukee County Sheriff as "David Clark." The sheriff of Milwaukee County is David A. Clarke, Jr.

6

[sic] the Attorney General for the State of Wisconsin at the time of the constitutional violation" did not approve the wiretap order. Id.

The plaintiff lists three counts in his complaint, but each of these contains multiple causes of action. The court will screen the amended complaint by cause of action.

### C. Legal Analysis of Fourth Amendment Claims

"[T]he Fourth Amendment requires the States to provide a fair and reliable determination of probable cause as a condition for any significant pretrial restraint of liberty. The probable-cause determination 'must be made by a judicial officer either before or promptly after arrest.'" Baker v. McCollan, 443 U.S. 137, 142-43 (1979) (quoting Gerstein v. Pugh, 420 U.S. 103, 125 (1975)). A person "cannot base a valid Fourth Amendment claim on an arrest made under a valid warrant." Neiman v. Keane, 232 F.3d 577, 579 (7th Cir. 2000). In addition, "a person arrested pursuant to a warrant issued by a magistrate on a showing of probable cause is not constitutionally entitled to a separate judicial determination that there is probable cause to detain him pending trial." Baker, 443 U.S. at 143.

#### 1. The Illegal Arrest Claims

The plaintiff focuses on alleged inconsistencies in Schmidt's arrest report to argue that Schmidt arrested him in violation of the Constitution. The crux of the plaintiff's argument is that Schmidt did not actually have a physical copy of a warrant when he arrested the plaintiff; rather, he merely had been briefed by defendant Gray that a warrant existed. The plaintiff assumes that the Fourth

7

[sic] the Attorney General for the State of Wisconsin at the time of the constitutional violation" did not approve the wiretap order. Id.

The plaintiff lists three counts in his complaint, but each of these contains multiple causes of action. The court will screen the amended complaint by cause of action.

### C. Legal Analysis of Fourth Amendment Claims

"[T]he Fourth Amendment requires the States to provide a fair and reliable determination of probable cause as a condition for any significant pretrial restraint of liberty. The probable-cause determination 'must be made by a judicial officer either before or promptly after arrest.'" Baker v. McCollan, 443 U.S. 137, 142-43 (1979) (quoting Gerstein v. Pugh, 420 U.S. 103, 125 (1975)). A person "cannot base a valid Fourth Amendment claim on an arrest made under a valid warrant." Neiman v. Keane, 232 F.3d 577, 579 (7th Cir. 2000). In addition, "a person arrested pursuant to a warrant issued by a magistrate on a showing of probable cause is not constitutionally entitled to a separate judicial determination that there is probable cause to detain him pending trial." Baker, 443 U.S. at 143.

#### 1. The Illegal Arrest Claims

The plaintiff focuses on alleged inconsistencies in Schmidt's arrest report to argue that Schmidt arrested him in violation of the Constitution. The crux of the plaintiff's argument is that Schmidt did not actually have a physical copy of a warrant when he arrested the plaintiff; rather, he merely had been briefed by defendant Gray that a warrant existed. The plaintiff assumes that the Fourth

Amendment requires an arresting officer or agent to have physical possession of the warrant; it does not.

In determining whether the plaintiff has sufficiently alleged facts that indicate that defendant Schmidt's arrest of the plaintiff violated the Fourth Amendment, the court must look, not at whether Schmidt had a copy of the warrant in his possession when he arrested the plaintiff, but at whether a valid warrant existed. The plaintiff attached a copy of the warrant to his complaint[3]; it indicates that on February 22, 2011—two days before Schmidt arrested the plaintiff—Milwaukee County Circuit Court Judge Jeffrey Kremers signed the warrant as the judicial officer. Dkt. No. 7 at 32, 35. The warrant states: "The State of Wisconsin to Any Law Enforcement Officer: . . . I find that probable cause exists that the crime(s) was/were committed by the Defendant(s)." Id. The "Defendant(s)" is identified in the caption on the warrant as Billy Joe Cannon. Id. Special Agent Timothy Grey[4] was the complaining witness on the warrant. Id.

This document—which the plaintiff himself provided—demonstrates that two days before Schmidt arrested the plaintiff, a judicial officer made a probable cause determination, as required by the Fourth Amendment. The plaintiff does not provide any case law or other support for the proposition that Schmidt was not entitled to rely on Gray's representation that the warrant existed, and the plaintiff's attachment proves that it did exist. Whether

---

[3] See In the Matter of Wade, 969 F.2d 241, 249 (7th Cir.1992) ("A plaintiff may plead himself out of court by attaching documents to the complaint that indicate that he or she is not entitled to judgment.")

[4] Throughout his complaint, the plaintiff spells Timothy Grey's name "Gray."

8

Schmidt had physical possession of the warrant, or merely knew from Grey's briefing that the warrant existed, the fact remains that a valid warrant existed at the time of the plaintiff's arrest. This is all the Fourth Amendment requires. The court will not allow the plaintiff to proceed on a Fourth Amendment claim against defendant Schmidt regarding the legality of his arrest.

2. The Invalid Warrant Claim

The plaintiff alleges that there are subtle differences between the two copies of the warrant that he attaches to his complaint, which differences, he alleges, proves that the warrant was doctored at some point. Dkt. Nos. 7 at 32, 35. The court has placed the documents side-by-side to try to find the differences the plaintiff perceived. The copy of the warrant that appears at Dkt. No. 7 at 32 had not been returned, and the fields on the "Return" portion of the warrant are blank. Id. It does not contain any receipt stamps from the clerk's office. The print is slightly blurred; this appears to be a result of the quality of the reproduction. Otherwise, the content of the two documents is identical; the handwriting of the various parties is identical; the dates are identical.

The plaintiff highlights that only one of the copies contains a "file stamp" from Milwaukee County Circuit Court clerk John Barrett dated February 1, 2011. Dkt. No. 7 at 35. The plaintiff is correct that this is odd, given that Judge Kremers issued the warrant on February 22, 2011, and that the warrant was returned on February 28, 2011. Id. The court cannot say for sure why there is a February 1, 2011 file stamp at the top of Dkt. No. 7 at 35. What the court can tell is that there also is a file stamp at the *bottom* of Dkt. No. 7 at 35,

9

Case 2:15-cv-01370-PP   Filed 07/07/16   Page 9 of 17   Document 11

indicating that the warrant was filed with the clerk's office on March 1, 2011—the day after it was returned. Id. Dkt. No. 7 at 35 clearly shows that Judge Kremers issued the warrant on February 22—*before* defendant Schmidt arrested him; that the warrant was returned on February 28, 2011 (after the plaintiff's arrest); and that it was filed in the clerk's office on March 2, 2011. Perhaps the February 1, 2011 stamp on Dkt. No. 7 at 35 was an error; perhaps whoever was to set the date on the stamp accidentally set it for February 1 instead of March 1. The court does not know. But the existence of that stamp does not change the fact that there was a warrant issued by an authorized judicial officer prior to the plaintiff's arrest.

### 3. The Illegal Detention Claim

The plaintiff claims that he was illegally detained "past the 48hr. detention [ph]a[s]e pursuant to Gerstein . . . ." Dkt. No. 7 at 19. In Gerstein v. Pugh, 420 U.S. 103, 114 (1975), the Supreme Court held that "the Fourth Amendment requires a judicial determination of probable cause as a prerequisite to extended restraint of liberty following arrest." The Supreme Court explained that such a determination "must be made by a judicial officer *either before or promptly after* arrest." Id. at 125 (emphasis added).

As already discussed, the warrant the plaintiff attached to his complaint reveals that a judicial officer made a probable cause determination *before* Schmidt arrested the plaintiff; this satisfied the Gerstein requirement. In addition, despite the fact that the plaintiff was "not constitutionally entitled to a separate judicial determination that there [was] probable cause to detain him

10

pending trial," see Baker, 443 U.S. at 143, he *did* get another probable cause hearing after he was taken to the Milwaukee County Jail. The plaintiff states as much in his complaint, Dkt. No. 7 at 11, and the Milwaukee County Circuit Court on-line docket shows that he appeared in intake court before Commissioner Grace Flynn on March 1, 2011. See State v. Cannon, No. 2011CF924, available at https://wcca.wicourts.gov. The plaintiff's complaint does not support his claim that he was illegally detained.

### 4. The Excessive Force Claim

The plaintiff makes a single, vague allegation that the defendants "joined to illegally arrest plaintiff with excessive force . . . ." Dkt. No. 7 at 18. The facts the plaintiff alleges in his complaint do not indicate that any of the defendants had physical contact with the plaintiff, much less used excessive force.

A complaint that offers only "labels and conclusions" is insufficient to state a claim. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555). To state a claim, a complaint must contain sufficient factual matter, accepted as true, "that is plausible on its face." Id. (quoting Twombly, 550 U.S. at 570). The plaintiff's excessive force claim does not meet this pleading standard, and the court will not allow the plaintiff to proceed on that claim.

### 5. The Lack of Probable Cause Claim

The plaintiff alleges that defendants Chisholm, Huebner and Lobel—the Milwaukee County District Attorney and two Assistant District Attorneys— prepared a complaint stating that there was probable cause to arrest him when

11

there was no such probable cause. No facts alleged in the complaint support this claim. As the court already has noted, a judge had found probable cause to arrest the plaintiff before the prosecutors prepared their complaint. Again, this allegation is conclusory and unsupported, and the court will not allow the plaintiff to proceed on the claim.

      6.   The Plaintiff's Conspiracy Claim

"For liability under §1983 to attach to a conspiracy clam, defendants must conspire to deny [a] plaintiff[] [his] constitutional rights." Hill v. Shobe, 93 F.3d 418, 422 (7th Cir. 1996). In other words, §1983 does not punish conspiracy as a standalone claim; "an actual denial of a civil right is necessary before a cause of action arises." Goldschmidt v. Patchett, 686 F.2d 582, 585 (7th Cir. 1982).

The court already has concluded that the plaintiff has failed to state claims against Schmidt, Grey, Chisholm, Huebner and Lobel relating to his arrest and detention. With regard to defendant Gunn, the plaintiff alleges only that Gunn picked him up and drove him from the Waukesha County Jail to the Milwaukee County Jail. Driving a lawfully-arrested defendant from one facility to another does not violate the Constitution. As to defendant John Doe—the person who issued or authorized the captain's hold at the Milwaukee County Jail—again, holding a lawfully-arrested individual does not violate the Constitution. The plaintiff makes no allegations of personal involvement against defendants Severson (the Waukesha County Sheriff), Layber (a supervisor at the Wisconsin DOJ DCI), or Clarke (the Milwaukee County

12

Sheriff); thus, he has not alleged any facts supporting a claim that these three individuals violated his constitutional rights. Because the plaintiff has not sufficiently alleged that any of the defendants violated his rights under the Constitution, he cannot state a claim of conspiracy.

      D.     <u>Legal Analysis of Alleged Illegal Wiretap Intercept</u>

The crux of the plaintiff's wiretap claim is that "Attorney General JB Van Holland [sic] the Attorney General for the State of Wisconsin at the time of the constitutional violation" did not approve the wiretap order as required by Title 3 of the Omnibus Crime Control and Safe Streets Act of 1968. In support of this claim, the plaintiff attaches to his amended complaint excerpts of an order entered by the then Chief Judge of the First Judicial Administrative District of the State of Wisconsin, which the plaintiff states authorized the interception of oral communications without the state attorney general's approval. Dkt. No. 7 at 37. Halfway into the first paragraph of the order, the judge clearly states that the order's entry is based, in part, on, ". . . the approvals under oath of said application by J.B. VanHollen, Attorney General of the State of Wisconsin, and John T. Chisholm, District Attorney of the County of Milwaukee . . . ." <u>Id</u>.

The exhibit the plaintiff attaches to his amended complaint contradicts his allegations. In a situation such as this, the Court of Appeals for the Seventh Circuit has made clear that the exhibit controls. <u>See</u> <u>Bogie v. Rosenberg</u>, 705 F.3d 603, 609 (7th Cir. 2013). The plaintiff's claim provides no basis for federal relief.

**II.     MOTION FOR A DECISION AND ORDER IN CASE NO. 15-CV-1370**

13

As the court noted above, the plaintiff mailed to the court a single envelope contained a stapled packet of papers. Contained in that packet of papers was the amended complaint in this case, which the court has just screened.

On March 28, 2016, the court received a motion from the plaintiff, asking the court to "re-evaluate the mis-filing of legal documents by the United States District Clerk of Courts," and to give him an opportunity to assess his cases. Dkt. No. 9. In particular, the plaintiff states that he never got a copy of the court's February 5, 2016 order (the one the court has now vacated). He indicates that he wants a chance to respond to the February 5, 2016 order. Id. at 1.

Even though the court has now vacated the February 5, 2016 order, it will nonetheless send the plaintiff a copy of it. The plaintiff should not "respond" to that order; it has been vacated, and no longer is in effect. Because the order no longer is effect, the court will deny the plaintiff's March 28, 2016 motion as moot.

### III. MOTION FOR PHONE CONFERENCE

On May 16, 2016, the plaintiff filed a motion, asking the court to schedule a telephone conference so that he could find out what was going on in his case. Dkt. No. 10. He argued that he'd never received the February 5, 2016 order, and hadn't heard anything about what was going on in his case or with his amended complaint. He asked the court to address these issues in a telephone hearing, as well as to address "why has the clerk of court has

continued to mis-file the documents related only to the cases filed by the plaintiff." Id. at 2.

The court will deny the request to schedule a phone conference as moot. The court acknowledges that it has been several months since the plaintiff filed his amended complaint (and the other items he stapled to it). The delay is not related to errors on behalf of the clerk's office—once the clerk's office figured out that among the various papers that the plaintiff had mailed to the court, he'd included the amended complaint in this case, the clerk's office immediately put the amended complaint on the docket. Since then, the clerk's office has docketed every item the plaintiff has filed. The delay in issuing this order is the court's responsibility alone. The court has a busy docket, and the criminal docket (which is subject to the Speedy Trial Act time limitations) has been particularly busy over the past seven months. The court has not been able to keep up with civil filings such as this one as well as it would like. The court apologizes to the plaintiff for the delay in issuing this order, but there is no need for a telephone conference.

## IV. CONCLUSION

The court **VACATES** its February 5, 2016 decision screening the plaintiff's November 16, 2015 complaint and **VACATES** the February 9, 2016 judgment entered by the clerk of court. The court **ORDERS** the clerk of court to remove the strike assessed against the plaintiff based on the court's February 5, 2016 decision.

15

Case 2:15-cv-01370-PP   Filed 07/07/16   Page 15 of 17   Document 11

The court **DISMISSES** the plaintiff's January 11, 2016 amended complaint for failure to state a claim.

The court **DENIES** the plaintiffs motion for a decision and order as **MOOT**. Dkt. No. 9.

The court **DENIES** the plaintiff's motion for a phone conference as **MOOT**. Dkt. No. 10.

The court **ORDERS** that the clerk of court shall enter judgment accordingly, and document that this plaintiff has brought an action that was dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1). The court further **ORDERS** that the clerk of court shall document that this plaintiff has incurred a "strike" under 28 U.S.C. §1915(g).

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within 30 days of the entry of judgment. See Federal Rule of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. See Federal Rule of Appellate Procedure 4(a)(5)(A).

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within 28 days of the entry of judgment. The court cannot extend this deadline. See Federal Rule of Civil

Procedure 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment.  The court cannot extend this deadline. See Federal Rule of Civil Procedure 6(b)(2).

The court expects parties to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin this 7th day of July, 2016.

BY THE COURT:

_____
HON. PAMELA PEPPER
United States District Judge